# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | |
| ALNITA TILLMAN ) | NO. 15-40372 |
| ) | |
| ) | CHAPTER 13 |
| Debtor ) | |
| ) | |
| ) | HON. Janet S. Baer |
| ) | |

### DEBTOR'S RESPONSE TO CIT BANK, N.A.'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

**NOW COMES** Alnita Tillman ("Debtor"), by and through her attorneys, Sulaiman Law Group, Ltd, and in Response to CIT Bank, N.A.'s ("CIT") Motion for Relief from the Automatic Stay (the "Motion") and in support thereof stating as follows:

### INTRODUCTION

On May 10, 2014, the Debtor's mother, Willie Mae Briggs, passed away. At the time of her death, Willie Mae Briggs was the sole owner of the property located at 9458 South Emerald Avenue, Chicago, Illinois ("subject property"). As of the direct result of her Mother's passing, the Debtor inherited the subject property on or about May 10, 2014.

Willie Mae Briggs had an individual reverse mortgage on the Subject Property with CIT "subject loan"). According to CIT's Motion for Relief from Stay, there is an outstanding balance of $121,932.74 on the subject loan that is addressed through the Debtor's Chapter 13 Plan.

CIT admits in both its Motion for Relief from Stay and in its Objection to Confirmation that the entire loan has become due prior to filing the underlying Bankruptcy. The Mortgage and Note attached to CIT's Motion for Relief clearly states that upon the borrowers death, when there

is no surviving borrower, and when the property was the primary residence, the loan becomes due. *See* docket 16-3, page 7, section 9(a)(i) – Grounds for Acceleration of Debt.

CIT argues in its Motion that Relief from Stay should be granted for four reasons: 1) Upon the death of Willie Mae Briggs, the Loan was accelerated pursuant to the terms of the note and mortgage, so the entire balance in is immediately due and payable in a lump sum; 2) The Debtor did not sign the note or the mortgage so she is not in contractual privity with CIT and therefore cannot provide for CIT's claim in her plan; 3) The proposed treatment is impermissible because CIT's claim is secured only by real property that is the Debtor's principal residence, so the proposed plan modifies the terms of a home mortgage in violation of 11 U.S.C. §1322(b)(2) and/or (b)(5); and 4) CIT is not adequately protected;

The arguments brought forth by CIT have no merit and for reasons set forth below, CIT's Motion for Relief should be denied.

## **REVERSE MORTGAGE – HOME EQUITY CONVERSION MORTGAGE**

In order to fully understand the treatment of CIT in Debtor's plan, it is important to review rules and regulations regarding reverse mortgages. Reverse mortgage (or home equity conversion) loans are subject to U.S. Department of Housing and Urban Development ("HUD") guidelines and may be insured by the Federal Housing Administration ("FHA"), allowing senior homeowners to acquire a secure loan against the equity in their homes. The loan is paid out as income to the homeowner.

HUD regulations define the qualifying events that trigger repayment of the Home Equity Conversion Mortgage (HECM). 24 C.F.R. § 206.27(c). One such event is the death of the borrower. *Id*. In such circumstances, the regulations provides:

> The mortgagee [lender] shall require the mortgagor [borrower] to
> (i) pay the mortgage balance, including any accrued interest and

>MIP [mortgage insurance premium], in full; (ii) sell the property for at least 95% of the appraised value . . . , with the net proceeds of the sale to be applied towards the mortgage balance; or (iii) provide the mortgagee with a deed in lieu of foreclosure.

Whether or not the mortgage is due and payable, the mortgagor may sell the property for at least the lesser of the mortgage balance or the appraised value . . . . If the mortgage is due and payable at the time the contract for sale is executed, the mortgagor may sell the property for at least the lesser of the mortgage balance or five percent under the appraised value. The mortgagee shall satisfy the mortgage of record . . . in order to facilitate the sale, provided that there are no junior liens . . . and all the net proceeds from the sale are paid to the mortgagee. *Id*. § 206.125(c).

In short, the regulations contemplate the possibility of HECM mortgagors satisfying their mortgages either before or after the borrower's death by selling the mortgaged property, then either paying the mortgage in full or, if the property is not worth as much as the mortgage balance, paying at least 95 percent of the appraised value of the property (the so-called "95 percent rule"). For purposes of such sales, the regulations' definition of "mortgagor" includes "the mortgagor's estate or personal representative." *Id*. § 206.123(b).

In the event that a mortgagor sells the property, but the sale proceeds fall short of the amount needed to satisfy the mortgage, HUD prohibits HECM lenders from seeking a deficiency judgment against the mortgagor. See *Id*. § 206.27(b)(8). *Santos v. Reverse Mortg. Solutions, Inc.*, 2013 U.S. Dist. LEXIS 146334, 2013 WL 5568384 (N.D. Cal. Oct. 9, 2013).

ARGUMENT

CIT attempts to argue in its Motion for Relief that the Reverse Mortgage somehow changes the allowed treatment of the subject debt through a Chapter 13 Bankruptcy case. However, that is not true. The subject debt is simply a mortgage loan that has matured prior to the filing of this underlying case. The secured claim should be paid in accordance is 11 U.S.C.

1322(c)(2) and 1325(a)(5).  The unsecured claim should be treated in accordance with HUD regulations §§ 206.27(b)(7), 206.109.

    1) <u>The subject debt became immediately due and payable upon Death;</u>

Debtor and CIT agree that the subject debt became due upon the death of Willie Mae Briggs which was May 10, 2014. The only remaining question is whether the fact that this subject debt has been accelerated and is now due in full would be valid grounds for granting CIT Relief from the Automatic Stay. The short answer is no.

There are two very basic concepts in Chapter 13, that allows the Debtor to treat the CIT loan in her Chapter 13 Plan: 11 U.S.C. 1322(b)(3) and 11 U.S.C. 1322(c)(2).  11 U.S.C. 1322(b)(3) simply allows a Debtor in Chapter 13 to cure a default through a Chapter 13 Plan.  In this instance, CIT admits the entire loan is currently in default and is due in full.  Under 11 U.S.C. 1322(b)(3), the Debtor has up to sixty months to cure the alleged default.

The language of 11 U.S.C. 1322(c)(2) states that, "in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5)."

No matter which statute the Court looks to, the end result is the same.  With CIT admitting the full loan is currently due or arguing the final payment was due prior to the filing of the underlying case.  The Debtor can treat the subject debt through her plan.

    2) <u>A Chapter 13 Debtor who owns property can cure a prepetition default even without privity with the mortgagee;</u>

The United States Supreme Court in *Johnson v. Home State Bank*, 501 U.S. 78, 111 S. Ct. 2150, 115 L. Ed. 2d 66, (U.S. 1991), made it clear that a debtor is permitted to treat a lien on

his/her property as a claim in a Chapter 13 bankruptcy plan, even if the debtor has no personal liability for the underlying debt. *Johnson* also stated that if the lien in questions is a residential lien and the last payment is due before the final plan payment, the debtor may modify the lien in a Chapter 13 plan pursuant to 11 U.S.C.S. §§ 1322(c)(2) and 1325(a)(5).

Under *Johnson*, a creditor does not have to hold a personal claim against a debtor. It is sufficient that a debtor owns property against which a creditor holds a lien. If the creditor holds a lien on the Debtor's property the lien is included in the debtor's bankruptcy estate. *Johnson* also acknowledges the statutory language of 11 U.S.C.S. §§ 101(5), 502(b)(1), and 102(2); which indicates that a claim against property held by a debtor is sufficient to constitute a "claim" within a Chapter 13 setting. *See In Pennsylvania Department of Welfare v. Davenport*, 495 U.S. 552, 559, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990), the Supreme Court defined a right to payment as an enforceable obligation, which implies that an obligation could be against a debtor personally or against a debtor's property.

3) <u>Debtor can modify treatment of her residential mortgage pursuant to 1322(c)(2) and 1325(a)(5);</u>

Generally, 11 U.S.C. § 1322(b)(2) is known as the "anti-modification clause," and provides that a Chapter 13 bankruptcy plan may modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is a debtor's principal residence. 11 U.S.C. § 1322(c)(2), however, is an exception to the anti-modification provision.

The exception that is found in § 1322(c)(2) is intended to apply to short-term home mortgages, home mortgages with balloon payments, or long-term home mortgages which have less than five years remaining under their terms. § 1322(c)(2) permits a plan to provide for payment of a claim as modified pursuant to 11 U.S.C.S. § 1325(a)(5).

Under § 1325(a)(5), a Chapter 13 plan may provide for the retention and payment of secured collateral in the amount of the value of that collateral as a secured claim. Any balance above the value of the collateral would be treated as an unsecured claim. When the last payment on a residential mortgage is due before the final plan payment, §§ 1322(c)(2) and 1325(a)(5) allow the modification of a mortgage by proposing to pay the creditor the full value of its collateral over the course of the bankruptcy. *In re Sanders*, 521 B.R. 739, 744 (Bankr. D.S.C. 2014). Section 1322(c)(2) has been interpreted to apply to both mortgages that mature postpetition and mortgages that matured or ballooned prior to the petition date. *In re Sanders*, 521 B.R. at 744 (citing *In re Brown*, 428 B.R. 672, 675 (Bankr. D.S.C. 2010), which applied §1322(c)(2) to a reverse mortgage that had accelerated pre-petition due to the death of the obligor.).

In this case, CIT is the holder of a reverse mortgage that was signed by the Debtor's mother, Willie Mae Briggs. The debt became due and the Debtor acquired the residential property upon the death of Willie Mae Briggs, which occured prior to the filing of the Debtor's bankruptcy petition. Accordingly, the Debtor may modify the mortgage in her Chapter 13 Plan, even though she did not sign the original Note, as long as the modification complies with the requirements of §1322(c)(2) and §1325(a)(5) of the Bankruptcy Code. *In re Harmon*, 2015 Bankr. LEXIS 4151, 2015 WL 8249995 (Bankr. M.D. Fla. Dec. 2, 2015).

Because the reverse mortgage became due by its terms prior to the petition date, 11 U.S.C. §1322(c)(2) applies and the Debtor may modify the reverse mortgage consistent with the requirements of 11 U.S.C. §1325(a)(5). See *In re Brown*, 428 B.R. 672 (Bankr. D.S.C. 2010) (A mortgage creditor's objection to confirmation was overruled because under 11 U.S.C.S. § 1322(c)(2), a debtor could pay over the term of her plan the total outstanding indebtedness on a

reverse mortgage that accelerated prior to the petition date as a result of her mother's death.) *Fannie Mae v. Griffin (In re Griffin)*, 489 B.R. 638, 642-43 (Bankr. D. Md. 2013) (The court found that the debtor was allowed under 11 U.S.C.S. § 1322(c)(2) to repay the debt in installments because the last payment owed on the debt came due prior to the proposed final payment under his bankruptcy plan, i.e., upon his mother's death); *In re Wilcox*, 209 B.R. 181, 183 (Bankr. E.D.N.Y. 1996) (Creditor's request for relief of an automatic stay was denied because debtor was entitled to force creditor to accept the terms of repayment under a plan in a Chapter 13 bankruptcy proceeding, even though no privity of contract existed with creditor. Debtor was entitled to cure the default by paying creditor's claim in full over the life of debtor's plan in accordance with Bankruptcy Code, 11 U.S.C.S. § 1325(a)(5)); *In re Gray*, 530 B.R. 501, 2015 Bankr. LEXIS 1198, 25 Fla. L. Weekly Fed. B 238 (Bankr. S.D. Fla. 2015)( Because the reverse mortgage became due by its terms prior to the petition date, 11 U.S.C. §1322(c)(2) applies and the Debtor may modify the reverse mortgage consistent with the requirements of 11 U.S.C. §1325(a)(5)); In re Evans, 2011 Bankr. LEXIS 1425, 2011 WL 1420887 (Bankr. M.D.N.C. Apr. 11, 2011)(The Court denied a Motion for Relief from Stay as the Debtor proposed to pay the Creditor's claim in full inside their Chapter 13 plan and were current with their plan payments.)

In addition to paying the mortgage over the life of the plan, the Debtor may strip down the secured claim to the value of the property as of the filing date. *American General Finance, Inc. v. Paschen (In re Paschen)*, 296 F.3d 1203 (11th Cir. 2002)(When a mortgage on a debtor's principal residence is governed by §1322(c)(2), that mortgage debt may be bifurcated, with the secured claim portion reduced to the value of the property. That secured portion may then be treated under§ 1325(a)(5).... *In re Gray*, 530 B.R. at 502. Allowing the Debtor to "strip down the

secured claim to the value of the property as of the filing date," and pay the mortgage over the life of the plan. *Id*.

In this case, the debt owed to CIT became due in full prior to the filing of the bankruptcy petition, upon the death of Willie Mae Briggs. Consequently, the Debtor is permitted to modify the Bank's mortgage in her Chapter 13 Plan, as long as the proposed modification complies with the requirements of §1322(c)(2) and §1325(a)(5) of the Bankruptcy Code; which Debtor believes it does as the Plan proposes to pay the secured balance owed to CIT in full over the life of the Bankruptcy Case.

4) <u>CIT is adequately protected</u>;

CIT's final attempt at convincing this Court that the Stay should be lifted, was an unsupported blanket statement that CIT is not adequately protected.11 U.S.C. § 361 states that adequate protection may be provided by: 1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 results in a decrease in the value of such entity's interest in such property; 2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or 3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title [11 USCS § 503(b)(1)] as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

The Debtor's Chapter 13 plan provides for payments in section 3.1(a).  CIT will receive payments on the amount of the secured claim with interest at 4.25% for a period of sixty months. Pursuant to the HUD regulations described above, the remaining unsecured balance is not collectible.  *See* HUD regulations §§ 206.27(b)(7), 206.109.

CIT is receiving monthly payments in accordance with the Chapter 13 Plan. CIT is adequately protected.

### Conclusion

There are no grounds under 11 U.S.C. §362(d) to lift the stay. The treatment of CIT is proper under 1322(c)(2) and 1325(a)(5) as well as under relevant caselaw. The Motion of CIT must be denied.

**WHEREFORE**, the Debtor prays this Honorable Court for the following relief:

A.  Denying CIT's Motion Lift the Automatic Stay;

B.  For any and all other relief this Court deems fair and proper.

Dated: February 21, 2016                                Respectfully Submitted,

/s/ Penelope N. Bach
Penelope N. Bach #6284659
Sulaiman Law Group, Ltd.
900 Jorie Blvd, Ste 150
Oak Brook, IL 60523
Phone: (630) 575-8181